71  371
138  110
71  371
33 SC ³363

## Moreland Township *versus* Davidson Township.

1. Under the Act of March 16th 1868, nothing is brought up by writs of error to orders for removal of paupers, but such matters of law and fact as have been excepted to in the court below.

2. Where one who is not a relation and not an object of charity, but able to earn wages, is employed in the service of another for any period of time, the law implies a contract of hiring and a promise to pay.

3. A pauper resided with her father in Davidson township; she left home and hired in Benton township; during many years afterwards she lived in different places without hiring or wages, and was afterwards living with friends in Moreland township, where she became a poor-charge: she was taken thence to Davidson, and by an order of removal taken to Moreland. On appeal from this order, *Held*, that as between Moreland and Davidson, Moreland was liable for her support.

March — 1872. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Quarter Sessions of *Sullivan county*: No. 153, to January Term 1872.

The proceedings commenced by an order of two justices of the peace of Sullivan county, issued in March 1870, directing the removal of Anna Sperry, a pauper, from Davidson township, Sullivan county, to Moreland township, Lycoming county; Moreland township appealed from the order to the Quarter Sessions of Sullivan county.

The facts in the case, as found by the court on the hearing, are contained in the opinion of Elwell, P. J., viz.:—

"The material facts are substantially as follows: On the 20th March 1868, Anna Sperry, the pauper, then aged about sixty-five years, came into the township of Moreland, with the family of Mahlon Taylor, in which she had lived in Muncy Creek township, Lycoming county, for nearly two years preceding. She continued to live in the family of Mr. Taylor, in Moreland township, doing housework until the 31st December 1868, when she slipped upon the ice and fell, injuring her knee and disabling her from doing work from that time to the present.

"On the 18th March 1869, upon complaint being made to two justices of the peace of Lycoming county, setting forth the fact that the said Anna Sperry was a poor and impotent person, and unable to provide for herself, and that she had not gained a settlement in that district, they made an order directed to the overseers of the poor of Moreland township, requiring them to receive her into their care, and to make suitable provision for her *until she could be removed to the place of her last legal settlement*.

In pursuance of this order the overseers of the poor of Moreland took charge of the pauper. In April 1869, one of the overseers of the poor of Moreland applied to C. B. Sperry, a resident of Davidson township, and a brother of the pauper, to take and keep her. Mr. Sperry replied that he was not able to support

[Moreland Township *v.* Davidson Township.]

her, but was willing to do what he could. The overseers replied that she belonged to the township of Davidson. On the 22d day of May 1869, at the time of the conversation last stated, the Overseers of Moreland had brought the pauper to the house of Mr. Sperry, in the night, when it was cold and raining. By reason of the exposure she took cold, and her injured limb became worse.

" She remained at the house of her brother, in Davidson, for nearly a year, when he informed the overseers of Moreland that he could keep her no longer, and that they must take her away. One of them promised that he would come up and see to it, but he did not. In May 1870, Mr. Sperry caused her to be taken to Moreland township ; the overseers of the poor refused to receive her, and she was brought back to his house. He then procured an order of relief from two justices of the peace, directed *to the* overseers of the poor of Davidson township, and thereupon the order of removal from Davidson to Moreland, which gives rise to the present controversy, was procured, the pauper was removed to Moreland, and this appeal therefrom was taken by the overseers of the poor of that township.

" On the 20th May 1869, an order of removal was obtained, directing the overseers of Moreland township to remove Anna Sperry, the pauper, to Davidson township, but it was not executed by delivering the pauper to the overseers of the poor of Davidson, nor does it appear that they had any notice thereof.

" There are other facts in the case, bearing upon the question of the settlement of the pauper, but before proceeding to settle or consider them, it is proper to dispose of the questions raised by those already stated. * * *

" I am of opinion, that as between Moreland and Davidson townships, the burden of proof is upon the former, to show that the latter is the last place of settlement of the pauper. * * *

" The command of an order of relief is in force until the pauper is removed to his last place of settlement. When that is done, even without an order of removal, and the overseers of the poor of that district have taken charge of the pauper under an order of relief, there is no good reason why they should be allowed to discharge themselves for ever from his support by an order of removal back to the district where the pauper had only a *quasi* settlement. If by legal proceedings, or otherwise, a pauper is brought where he is legally settled, and is there, by proper authority, placed in the hands of the overseer, an order to remove him thence would be contrary to the spirit and meaning of the Acts of Assembly. It is the duty of the district, where he is settled, to provide for him, and it is no answer to the obligation to say, that another district having her in charge before, failed to discharge its duty.

" This brings to the inquiry whether Anna Sperry's last place of settlement is in Davidson township. In 1827 she came to that

township with her father, and as one of his family, and lived there with him, on .a farm owned by him, for several years, when she went to Franklin township, Luzerne county, where she resided for a time in the family of John Flick.

" Up to this time Anna does not appear to have any other settlement than that derived from her father.    While she remained with him as part of his family, her settlement followed his.    But when she separated herself therefrom, she being of the age of twenty-two years, was emancipated, and could have no derivative settlement.

" Her father being the owner of a freehold estate in Davidson township, upon which he resided for more than one whole year while she was yet a member of his family, she had a settlement there which was then, and still is hers, unless she has in some of the modes mentioned in the statute, acquired one for herself.

" It is alleged that she has acquired such settlement by hiring and service for one year in four different townships, by as many different hirings and service, to wit : first in Franklin township, Luzerne county.    It appears from her testimony that she went to hire with a Mr. Worthington, in that township, and remained until a year from the next fall.    In regard to this she says : ' Mr. Worthington came after me to go to his house, to give me a home ; he said his wife wished me to come and live with them.    After I had been there awhile, I asked him if I should be sick, if they would be willing to take care of me.    He replied that if I had a short sickness he would take care of me as well as they could, but if I had a long sickness they would put me on the township.    After this conversation I went on and worked for them, and they provided me with boarding and all that I needed.    This conversation took place, I think, in the fall after I went there.    I stayed there after, the same as I did before.    I lived with them, and worked as one of the family.'

" Upon cross-examination in regard to this and other conversations testified to, the witness said : ' At none of the places that I worked did I expect any wages, except at Hess's and Ash's.    At the other places they could give me anything or nothing, as they pleased.'    She explains, that by wages she meant money.    On redirect examination she said : ' I expected to receive all they encouraged me to expect, and I did receive it.    I expected that Mr. Worthington would support me a short time if I had been sick, because he was a gentleman and an honest man.'

" Was the service at Worthington's under a hiring within the meaning of the statute ?    Clearly it was not.    She was offered a home at his house, and she accepted the offer.    She went to ' live with them,' and she stayed and worked there as one of the family, both before and after the conversation in regard to taking care of her if she should be sick.    The whole arrangement was gratuitous. She needed a home, and her services were undoubtedly equivalent

[Moreland Township *v.* Davidson Township.]

for all that she required for her sustenance. The promise, if it may be so called, to take care of her 'when sick for a short time,' was nothing more than was implied in offering her a home. It does not appear that she was induced by this conversation to remain, nor that she intended to leave if it had not taken place. Without a hiring under a contract, express or implied, no settlement is gained; service for which board and clothing are given, without a bargain, is not sufficient: Lewiston *v.* Granville, 5 Barr 283. * * *

" The next hiring relied upon is that spoken of by Anna Sperry, when she says, ' I went to my sister's in Fishing Creek township, Columbia county. She had a cancer and wanted me to come and take care of her and do her work. She was not able to do her own work, and not able to hire a girl, and I went and worked for her. She said, ' I am not able to pay you for what you do, but I will give you all my clothes.' I stayed with her until she died, which was about a year and a half.' Again witness says, ' There was no bargain of any kind when I first went there    Sometime after I first went there, to my sister's, she spoke to me about giving me her clothes, and said she had no money. I never asked her for money or clothes.'

" Here again there was no bargain, no hiring. Anna knew her sister was not able to pay hired help; that she could not pay her wages, but prompted by sisterly affection she went to take care of her in time of her affliction and last illness. In such a case proof of an *express* contract ought to be required to establish a claim for wages. *In the face of express proof that no bargain was made, and no wages expected, the law will not imply a contract or hiring.*

" It is incumbent on Davidson township to show affirmatively that Anna has gained an independent settlement from that of her father. The facts should be so clearly proved as not to leave the question doubtful. In the light of this rule it is impossible to conclude that she worked a year for her sister under a promise that her clothes should be given her (Anna) when she, the sister, was dead. This conversation took place at ' sometime' after Anna went there; but whether she worked for her sister a year after that, does not appear. But if it did, a living was not thereby established. A dying woman tells her sister, who was ministering to her wants, probably while gratefully acknowledging the kindness received, that the only return she can make for it is to leave her her clothes when she is done with them. This was not said with the idea of a contract in mind, nor was it received in that manner.

" The evidence of the service in the family of her sister after her death, falls so far short of a living that no comment is necessary in regard to it. It is found in the testimony of Anna Sperry in these words : ' After my sister's death I remained with the family in the neighborhood of three years by request of nephew and his

[Moreland Township v. Davidson Township.]

wife, who said, 'we can do as well by you as any of your folks.' I worked in his family as I had done.' Here was no contract; the work was gratuitous and voluntary, and what should be done in return was of the same character.

"The allegation of hiring and service in the family of Mahlon Taylor, in Muncy Creek and Moreland townships, is not sustained by the depositions. Mrs. Taylor was the niece of Anna. In May 1866, Mrs. Taylor, out of kindness, requested her to come and live with them. That summer she came and remained with the family until she was injured by the fall before mentioned. Mr. Taylor swears expressly that he had no bargain with her, and that he did not pay her wages. And Anna herself testifies: 'I suppose Mahlon Taylor gave me the offer of a home through kindness. I was aunt to his wife, and she wanted to be kind to me, and it would be an advantage to them because I was well and able to work.' The circumstances under which she came into and remained with the family, negative all idea of a hiring, and as service without a hiring will not gain a settlement, she acquired none in either of the last-named townships.

"I now proceed to notice that which in my judgment clearly proves a settlement out of the township of Davidson.

"It appears by the testimony of Asa Sperry [that about nineteen years ago Anna Sperry worked a year or two for a Mr. Doty, in Benton township, Columbia county; that Doty's folks were no relation to her, and she was then strong and able to do a full woman's work in the house, and that he understood from her that she was at work for wages.]

"Under this evidence it is not to be doubted that Anna Sperry could have recovered for her services, what they were reasonably worth. There is nothing in the whole testimony which rebuts the legal implication of a contract in this case. * * *

"I am therefore of opinion that Anna Sperry has acquired a settlement since she was emancipated from her father, being unmarried and having no child at the time, according to the uncontroverted testimony in this case, in Benton township, Columbia county, whereby her derivative settlement in Davidson was lost. The township of Moreland could not, by sending the pauper to Davidson, compel that township to search for the last place of settlement. By the happening of the accident to her in Moreland township the labor of doing that was cast upon it.

"The order of removal from Davidson to Moreland merely returned the pauper to the place, for the time being at least, liable to her support. As between these townships Moreland is the place of settlement. * * *

"The order of removal is affirmed," &c.

Moreland township, by leave of the court, filed exceptions, September 31st 1870; to the opinion of the court.

[Moreland Township *v.* Davidson Township.]

1. The evidence admitted and found by the court (in the opinion in brackets), should not have been admitted, being hearsay.

2. The evidence is insufficient to prove such a hiring in Benton township as would give the pauper a settlement, not being that required by the Act of Assembly.

3. The court decided that there was such an implied contract of hiring between the pauper and Mr. Doty, as fulfilled the requirements of the law and gave her a settlement in Benton township.

4. The court decided that an implied contract of hiring is sufficient to gain a settlement.

5 and 6. The facts in evidence were insufficient to give a settlement in Benton township and to authorize the removal there; to change the pauper from Davidson to Moreland, no settlement having been proved since her settlement in Davidson.

The exceptions were "not sustained, and the judgment and order as made were affirmed."

Moreland township took a writ of error to the Supreme Court, and assigned for error: that the court erred as set forth in the several exceptions to the findings, &c.

*J. L. Grim* and *R. L. Bentley*, for the plaintiff in error.—The admissions and declarations of a pauper are not evidence: West Buffaloe *v.* Walker, 7 Watts 173. The service to gain a settlement must be under a "hiring" for a year: Act of June 13th 1836, § 9, Pamph. L. 542, 2 Br. Purd. 1155, pl. 10. A contract must appear: Lewistown *v.* Granville, 5 Barr 284

*T. J. Ingham* and *E. M. Dunham*, for defendant in error.— The care of the pauper was on Moreland, and it could not be relieved by her removal to Davidson: Kelly Township *v.* Union Township, 5 W. & S. 536; Milton Township *v.* Williamsport, 9 Barr 46. As to the hiring they cited Heidleberg *v.* Lynn, 5 Wharton 433.

The opinion of the court was delivered, May 13th 1872, by

THOMPSON, C. J.—This case is before us on a writ of error to the Quarter Sessions of Sullivan county, under the provisions of the Act of 16th March 1868, Pamph. L. 46, which provides that "Upon the hearing and argument of all appeals, before any court of Quarter Sessions, from the order of removal of paupers from one district to another, it shall be lawful for either of the parties to the issue to except to any decision of the court upon any point of evidence or law, which exception shall be noted by the court and filed of record, as in civil cases ; and a writ of error to the Supreme Court may be taken by either party to the judgment of the court with like effect as in civil cases."

It may be well for the profession to notice this provision,

[Moreland Township v. Davidson Township.]

for it changes the practice in pauper cases to be brought up for review, materially.    Formerly the practice was to bring the whole case up on appeal; the evidence and opinion of the court with the record.    Now only such matters of law and fact as are excepted to on the hearing can come up.    The matters of fact mean such, we presume, as are not properly evidence, or if, evidence from which an erroneous conclusion is thought to have been deduced. The case in hand is sufficiently before the court under the act.

The law of the learned court is not excepted to, and we have only to deal with exceptions to certain facts received in evidence and the deductions from them.

The first exception has reference to the evidence and finding of the learned judge of a hiring and performance of service by Anna Sperry, in Benton township, Columbia county, at one Doty's for a year.    The proof was by a brother of Anna, who testified that he visited her while she worked there; that she was strong and capable of doing full work as a house servant; that she worked there one or two years, and that he thinks she worked for wages; that he always understood it so, and that Doty's family were no relations of hers.    It was earnestly contended that this was not a hiring, and the performance of service for a whole year under which a settlement could be gained.    It would not be, under the English rule, but we think it was under our more liberal rule.    If one who is no relative, and not an object of charity but able to earn wages, is proved to have been employed in the service of another for a year, or any other period of time, the law implies a promise to pay, on the implication of a contract.    Certainly this presumption of a contract will stand until rebutted by facts to the contrary.    But we are not without authority on the point.    In Heidleberg v. Lyon, 5 Whart. 430, Chief Justice Gibson, in treating of the point, said, " Our law seems to consider service alone as the meritorious cause, and to require that there should have been a contract for it, only as proof that it was valuable, and distinguished in that respect from those feeble and trifling acts which are sometimes performed in requital of a gratuitous maintenance;" in other words, to show that the hireling had been a benefit to the township and a producer, and not a pauper from the beginning.    " It is therefore," he says, " enough for the purpose that the pauper has been in uninterrupted employment, whether under one contract or any number of contracts." The proof was certainly to this effect.    It is sufficient for a party to an action, primâ facie, to show labor performed to raise an implied assumpsit to pay for it: Swires v. Parsons, 5 W. & S. 357. Cases are not necessary to prove this.    The proof was primâ facie here sufficient to raise a presumption of hiring and conclusive on the hearing, not being disproved or repelled.    Of course, the judgment of the court was not conclusive on Benton township,

[Moreland Township *v.* Davidson Township.]

but only on Moreland township, in the contest with Davidson township. This being so, the decree of the court affirming the order of removal from Davidson to Moreland, together with expenses and costs, was altogether proper and right. It will be for the latter to take charge of the pauper until it finds her place of last legal settlement. I will not speculate on what might be the condition of affairs, if it should turn out eventually that she had no residence in Benton or any other township, excepting at her derivative settlement, which it seems was Davidson township; we leave this until it occurs. One thing we regret to notice in this case, which we ought not to omit, that one at least of the overseers of Moreland township, acted like anything but the good Samaritan, in surreptitiously removing this poor lame woman in the wet and cold from the place of her injury, and in the nighttime, to the house of a very indigent brother, for the evident purpose of getting rid of the maintenance the township owed her until her true place of settlement could be ascertained. It was uncharitable, and I might add, unchristian conduct, to say the least of it.

We have thus noticed all that the exceptions in the case call for notice. We think the case was well and ably decided, and that the law involved follows the decisions so accurately that it left no room for complaint by the plaintiff in error, or for remark by us.

Judgment affirmed.